IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| B&L ENVIRONMENTAL, | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  1:22-CV-00083 |
| | § | JUDGE MICHAEL J. TRUNCALE |
| THE TRAVELERS LLOYDS INSURANCE | § | |
| COMPANY, | § | |
| | § | |
| *Defendant.* | § | |

## <u>OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

Before the Court is Defendant, The Travelers Lloyds Insurance Company ("Travelers")'s, Motion for Summary Judgment. [Dkt. 29]. For the reasons discussed below, the Court grants Travelers' motion in part as to Plaintiff, B&L Environmental ("B&L")'s, Conspiracy to Commit Fraud claim, but otherwise denies the motion.

## I.    BACKGROUND

This insurance coverage dispute involves four pieces of heavy machinery (collectively, the "Equipment")  owned by B&L: (1) a 2008 Gyrotrac GT25xp; (2) a 2010 Tigercat 480 Mulcher; (3) a 2015 Dragon RNG 55 Ton hauler trailer; and (4) a 2015 323 Caterpillar excavator. In 2017, Hurricane Harvey damaged the Equipment. Luckily for B&L, it had an insurance policy issued by Chubb Group of Insurance that covered the damage. Chubb paid B&L a total of $256,502.22, which included $209,708.96 to repair the Equipment. Unluckily for B&L, Tropical Storm Imelda hit two years later, and the Equipment once again suffered damage.

This time around, the Equipment is covered by an insurance policy issued by Travelers, not Chubb. Travelers issued commercial insurance policy number QT-660-9K718445-TLC-19 (the "Policy"), with a policy period of February 21, 2019, to February 21, 2020, to B&L. On

September 25, 2019, B&L filed a claim under the Policy for flood damage to the Equipment caused by Imelda. B&L's claim identified September 18, 2019, as the date of loss.

Travelers estimated that the cost of covered repairs totaled $5,883.38: $844.77 to repair the Gyrotrac; $570.00 to repair the Tigercat; $3,867.61 to repair the Dragon; and $601.00 to repair the Caterpillar ("Travelers' November 2019 Estimate"). Because the Policy has a $50,000 flood deductible, on December 2, 2019, Travelers' claim adjuster, Tracy Beaudoin, informed Randall Harris, a public adjuster hired by B&L, that Travelers would not be making a payment to B&L for the loss. On April 3, 2020, Harris submitted six estimates for repairs to the Equipment to Travelers. Harris's estimates totaled over $222,000. On June 15, 2020, Harris sent travelers another estimate (the "Sieben Estimate"), prepared by Sieben Equipment Services, Inc., for certain additional repairs to the Caterpillar totaling over $64,000.[1]

After reviewing the estimates, Travelers informed Harris that it needed documentation showing that the damage was caused by Imelda (as opposed to Harvey). Travelers also suspected that the Sieben Estimate addressed issues other than flood damage, like damage caused by improper maintenance after the flood. In August 2020, Travelers' investigator, Richard Mank, emailed Harris requesting (1) a copy of all invoices or parts used to repair the damage to the Equipment caused by Harvey; and (2) invoices or other documentation showing that B&L attempted to prevent further damage to the Equipment following Imelda.

B&L did not produce any such documentation. Brooks Bonin, president and owner of B&L, testified under oath that the Equipment had been damaged by Harvey, and subsequently repaired, but that the invoices and records documenting those repairs were destroyed when Imelda

---

[1] According to B&L, after Travelers inspected the equipment, it told B&L that the Caterpillar could be repaired by simply applying grease. B&L followed this instruction and contends that it caused further damage, costing an additional $64,244.

flooded his office. In June 2021, B&L's counsel sent Travelers' counsel a copy of two invoices for repairs to the Tigercat that occurred prior to Imelda. Only one of the invoices—the purchase of two piston motors—relates to repairs called for by an October 2017 estimate produced after Harvey. Neither invoice showed that B&L fully repaired the Tigercat to its pre-Harvey condition.

On July 12, 2021, B&L's counsel sent Travelers a notice and demand letter demanding that Travelers pay B&L $331,599.19: $287,564.51 in repair costs for damage to the Equipment caused by Imelda, $43,134.68 in statutory interest, and $900.00 in attorneys' fees.[2] Shortly thereafter, on July 20, 2021, B&L's counsel sent Travelers an amended notice and demand letter under Chapter 542A of the Insurance Code. The amended notice demanded $1,093,696.74: $237,564.51 in net actual damages ($287,564.51 actual damage minus $50,000 deductible), $712,693.53 in punitive damages, $142,538.70 in interest, and $900.00 in attorneys' fees.[3]

Travelers re-inspected the Equipment on November 4, 2021, and subsequently notified B&L's counsel that it would not be issuing any supplemental payments on the claim because: (1) B&L failed to provide Travelers with documentation or other information showing that B&L had completed the repairs to the Equipment outlined in Travelers' November 2019 Estimate; (2) during its investigation of the Imelda claim, Travelers uncovered evidence that the Equipment had been damaged by flooding from Harvey in 2017 and that B&L recovered $256,502.22 from Chubb for that damage, but that B&L had not provided evidence that it repaired the Equipment to its pre-Harvey condition; and (3) it believed from its re-inspection of the Equipment that B&L had not taken necessary steps to mitigate its loss and to prevent further damage following Imelda. There

---

[2] The letter provides that the demand is for $331,599.18 not $331,599.19 but the individual amounts add up to the latter total. *See* [Dkt. 29-18 at 3].

[3] The letter provides that the demand is for $1,093,696.70 not $1,093,696.74 but the individual amounts add up to the latter total. *See* [Dkt. 29-19 at 3].

are two sides to this story, however. According to B&L, Travelers not only knew that the Equipment had previously been damaged by Harvey and repaired using the Chubb coverage before it issued the Policy, but that Travelers increased B&L's flood deductible to $50,000 because of that previous claim. Further, B&L contends that Travelers had the opportunity to inspect the Equipment before issuing the Policy (*i.e.*, to confirm that it had been repaired to its pre-Harvey condition), but declined to do so.

After receiving Travelers' last notice, B&L filed suit against Travelers in state court.[4] B&L asserted claims for breach of contract, violations of Chapter 541 and 542 of the Texas Insurance Code, fraud, and conspiracy to commit fraud. Travelers removed the case to this Court based on diversity jurisdiction, and now seeks summary judgment on B&L's claims.

## II.    LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when the pleadings and evidence demonstrate that no genuine issue of material fact exists, and the movant is entitled to judgment as a matter of law." *DIRECTV, Inc. v. Robson*, 420 F.3d 532, 536 (5th Cir. 2005) (internal citations omitted); Fed. R. Civ. P. 56(c). An issue is material if its resolution could affect the outcome of the action. *DIRECTV*, 420 F.3d at 536. A dispute as to a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.* All reasonable inferences must be drawn in favor of the nonmoving party. *Smith v. Amedisys, Inc.*, 298 F.3d 434, 440 (5th Cir. 2002). There is no genuine issue of material fact if, when the evidence is viewed in the light most favorable to the nonmoving party, no reasonable

---

[4] B&L initially also sued Tracy Beaudoin and Dishon Insurance Agency. B&L filed a nonsuit of its claims against Beaudoin before Travelers removed this case to this Court. [Dkt. 1-2 at 3]. After Travelers removed the case, this Court dismissed Dishon Insurance Agency. *See* [Dkt. 24].

trier of fact could find for the nonmoving party. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263–64 (5th Cir. 1991) (citations omitted).

Where the dispositive issue is one which the nonmoving party will bear the burden of persuasion at trial, the moving party may satisfy its burden of production by either (1) submitting affirmative evidence that negates an essential element of the nonmovant's claim, or (2) demonstrating that there is no evidence in the record to establish an essential element of the nonmovant's claim. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th Cir. 1987) (internal citations omitted).

If, under the first option, the nonmoving party cannot point to evidence sufficient to dispute the movant's contention that there are no disputed facts, the moving party is entitled to summary judgment as a matter of law. *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288–89 (1980); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986).  Under the second option, the nonmoving party may defeat the motion by pointing to "supporting evidence already in the record that was overlooked or ignored by the moving party." *Celotex Corp. v. Catrett*, 477 U.S. 317, 332–33 (1986) (Brennan, J., dissenting). "Conclusory allegations unsupported by concrete and particular facts will not prevent an award of summary judgment." *Duffy v. Leading Edge Prods.*, 44 F.3d 308, 312 (5th Cir. 1995).

If the nonmoving party can meet its burden under either of these scenarios, the burden shifts back to the movant to demonstrate the nonmovant's inadequacies. *Id.* If the movant meets this burden, "the burden of production shifts [back] to the nonmoving party, who must either (1) rehabilitate the evidence attacked in the moving party's papers, (2) produce additional evidence showing the existence of a genuine issue for trial as provided in Rule 56(e), or (3) submit an affidavit explaining why further discovery is necessary as provided in Rule 56(f)." *Celotex*, 477

U.S. at 333 n.3. "Summary judgment should be granted if the nonmoving party fails to respond in one or more of these ways, or if, after the nonmoving party responds, the court determines that the moving party has met its ultimate burden of persuading the court that there is no genuine issue of material fact for trial." *Parekh v. Argonautica Shipping Invests. B.V.*, No. CV 16-13731, 2018 WL 295498, at *3 (E.D. La. Jan. 4, 2018) (quoting *Celotex*, 477 U.S. at 333 n.3).

## III.    DISCUSSION

### A.  Breach of Contract

An insurer is liable only for losses covered by the policy. "The doctrine of concurrent causes provides that when covered and non-covered events under an insurance policy combine to create a loss, the insured may only recover the portion of the damage caused by the covered event."[5] *Hosp. Ops., LLC v. Amguard Ins. Co.*, No. 1:19-CV-00482-MJT, 2021 WL 2688618, at *4 (E.D. Tex. Apr. 29, 2021) (citing *Seahawk Liquidating Trust v. Certain Underwriters at Lloyds London*, 810 F.3d 986, 994 (5th Cir. 2016)). When this occurs, "the insured must present some evidence affording the jury a reasonable basis on which to allocate the damage." *Lyons v. Millers Cas. Ins. Co. of Tex.*, 866 S.W.2d 597, 601 (Tex. 1993). "The evidence presented need not be 'overwhelming' nor must it 'flawlessly segregate' covered losses from non-covered losses." *Hosp. Ops.*, 2021 WL 2688618, at *4 (quoting *Fiess v. State Farm Lloyds*, 392 F.3d 802, 808 (5th Cir. 2004)). And expert allocation of damages between covered and excluded risks is not necessarily required; "circumstantial evidence can suffice." *Lyons*, 866 S.W.2d at 601. "If the insured falls

---

[5] The Fifth Circuit has noted that "there are substantial gaps" in the doctrine, and has made multiple attempts to certify questions involving the doctrine to the Supreme Court of Texas. *See Overstreet v. Allstate Vehicle and Prop. Ins. Co.*, 34 F.4th 496, 497 (5th Cir. 2022), *certified question accepted* May 27, 2022, *certified question dismissed* Sept. 16, 2022; *Frymire Home Servs., Inc. v. Ohio Sec. Ins. Co.*, 12 F.4th 467 (5th Cir. 2021), *certified question accepted* Sept. 10, 2021, *certified question dismissed* Dec. 3, 2021; *see also Advanced Indicator & Mfg., Inc. v. Acadia Ins. Co.*, 50 F.4th 469, 476 n.4 (5th Cir. 2022) (noting that *Overstreet* and *Frymire* both settled after certification, so the court's questions regarding when the concurrent doctrine applies and the plaintiff's burden of proof under it remain unanswered).

short of meeting this burden, the insurer is entitled to summary judgment." *Certain Underwriters at Lloyd's of London v. Lowen Valley View, L.L.C.*, 892 F.3d 167, 170–72 (5th Cir. 2018).

In *Lyons*, a homeowner submitted a claim to her homeowner's insurance carrier for damage to the brick veneer and outside staircase on her house. 866 S.W.2d at 598. She alleged that a windstorm—a covered peril under the policy—caused the damage. *Id.* The carrier denied her claim, contending that the settling of the foundation, not the windstorm caused the damage. *Id.* At trial, the homeowner and two neighbors testified that the damage did not exist before the storm, and the jury found that the windstorm in part caused the damage. *Id.* at 599. On appeal, the insurer argued that the homeowner did not provide sufficient evidence to allocate the evidence, emphasizing that even the homeowner's expert "admitted the 'likely' presence of some preexisting damage and that the determination of the extent of the storm-related damage would be 'very hard.'" *Id.* at 601. The Supreme Court of Texas rejected this argument, however, stating that "[t]he testimony of [the homeowner] and her neighbors that there was no preexisting damage to the staircase or brick veneer constituted some evidence of the extent of damage attributable solely to the windstorm." *Id.* It is the jury's role to assess credibility of evidence. "*[S]ome* evidence of the extent of the damage attributable solely to windstorm" was sufficient to support the jury's finding. *Id.* at 601 (emphasis added).

In *Lowen Valley*, a hotel discovered significant hail damage on its roof after an employee reported that "shingles on the top of the hotel looked bad" in November 2014. 892 F.3d at 168–69. The hotel filed a claim for the hail damage under an insurance policy with a coverage period of June 2, 2012, to June 2, 2013. *Id.* at 170. Summary judgment evidence revealed that "several hailstorms struck the vicinity of the hotel in the several years preceding [the hotel's] claim"—only one of which occurred during the policy period. *Id.* The only evidence that the hail damage

occurred during the policy period was an expert's opinion that "the most recent hailstorm with hailstones large enough to cause the damage . . . was on June 13, 2012." *Id.* at 171. Because the hotel discovered the damage over two years after the most recent hailstorm, it could not testify based on personal knowledge that the damage occurred during the policy period, as the insured in *Lyons* did. Accordingly, the district court held, and the Fifth Circuit affirmed, that the insurer "was entitled to summary judgment because the record lacked reliable evidence permitting a jury to determine which of these storms—alone or in combination—damaged the hotel." *Id.* at 170–71.

The present case is more analogous to *Lyons* than *Lowen Valley*.  B&L provided the Court with a sworn declaration from Mr. Bonin, in which he states that "after Hurricane Harvey B&L had the Equipment fully repaired." [Dkt. 30-1 at 2]. Mr. Bonin also states that "as a result of Imelda's flooding, B&L's computers, business records, and invoices that corroborated the monies received from Chubb for the Harvey damages and the repairs B&L made to the Equipment post-Harvey had largely been destroyed," and that as a mechanic, he did many of the repairs himself. *Id.* at 5. Unlike the hotel in *Lowen Valley*, B&L has offered testimony from someone who can testify—based on personal knowledge of the property's pre-storm condition—that the damage occurred during the policy period. This evidence is sufficient to create a genuine issue of material fact as to whether Imelda caused this damage.[6] Like in *Lyons*, it will be the jury's role to assess the credibility of Mr. Bonin's testimony that Imelda caused this damage.

Travelers objects that Mr. Bonin's declaration that "after Hurricane Harvey, B&L had the equipment fully repaired," [Dkt. 30-1 at 2], is not proper summary judgment evidence because it

---

[6] B&L also argues that even if the Equipment "had not been 'fully repaired' . . . if the damages caused by Imelda subsumed the damages caused by Harvey and the Imelda-elated damaged would have occurred even without Harvey, then the necessity of repairs, which B&L is claiming here, is the result of [an] entirely independent cause, *i.e.*, Imelda . . . And in that cause, the concurrent causation doctrine does not apply." [Dkt. 30 at 13] (citing *Anthon Minor, Ltd. v. State Auto Mut. Ins. Co.*, No. SA.21-CV-01180-JKP, 2023 WL 352935, at *7 (W.D. Tex. Jan. 20, 2023). This seems to be one of the murky areas of the concurrent causation doctrine. The Court need not answer this question at this stage, however.

is "conclusory and unsupported by specific facts." [Dkt. 32 at 4]. The Court disagrees and overrules Travelers' objection. As the owner of B&L, Mr. Bonin likely has personal knowledge of whether the Equipment was fully repaired. He is entitled to testify to this. Like the homeowner's testimony in *Lyons* that the damage did not exist before the storm, Mr. Bonin's testimony that the Equipment was fully repaired is evidence that the jury may consider. The Court is not aware of any rule that requires excluding otherwise admissible evidence simply because the party that offers it does not corroborate it with duplicative evidence.

Because a genuine issue of material fact exists as to whether Imelda damaged the Equipment, Travelers is not entitled to summary judgment on B&L's breach of contract claim.

## B.  Texas Insurance Code Chapter 541

Chapter 541 of the Texas Insurance Code "supplements the parties' contractual rights and obligations by imposing procedural requirements that govern the manner in which insurers review and resolve an insured's claim for policy benefits." *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 488 (Tex. 2018). "The Code grants insureds a private action against insurers that engage in certain discriminatory, unfair, deceptive, or bad-faith practices, and it permits insureds to recover 'actual damages . . . caused by' those practices, court costs, and attorney's fees, plus treble damages if the insurer 'knowingly' commits the prohibited act." *Id.* (quoting Tex. Ins. Code Ann. §§ 541.151, 541.152).

Actual damages in this context are typically policy benefits that the insured was entitled to but did not receive because of the insurer's statutory violation. "The general rule is that an insured cannot recover policy benefits for an insurer's statutory violation if the insured does not have a right to those benefits under the policy." *Id.* at 490. An exception to this general rule applies, however, "when the insurer's statutory violation actually caused the policy not to cover losses that

9

it otherwise would have covered." *Id.* at 498. Actual damages for statutory violations are not *always* policy benefits, however. "[I]f an insurer's statutory violation causes an injury independent of the insured's right to recover policy benefits, the insured may recover damages for that injury even if the policy does not entitle the insured to receive benefits." *Id.* at 499.

### 1. Unfair Settlement Practices

Section 541.060 of the Texas Insurance Code allows insureds to recover actual damages against an insurer that had engaged in enumerated "unfair settlement practices with respect to a claim by an insured or a beneficiary." Tex. Ins. Code. Ann. § 541.060. The enumerated unfair settlement practices include, among others: "misrepresenting to a claimant a material fact or policy provision relating to coverage at issue,"[7] *id.* § 541.060(a)(1), and "failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of . . . a claim with respect to which the insurer's liability has become reasonably clear." *Id.* § 541.060(a)(2).

Travelers asserts that B&L's Section 541.060 claims must fail as a matter of law because B&L cannot prove that it is entitled to benefits under the Policy *or* that it sustained an independent injury. [Dkt. 29 at 22]. But as already discussed, whether B&L can prove that it is entitled to policy benefits is subject to genuine issues of material fact. *See* discussion *supra* Section III.A.

Whether B&L can prove that it sustained an injury independent of any lost policy benefits is also a genuine issue of material fact. For example, according to B&L, "Travelers made a direct misrepresentation to B&L in connection with the handling of the Imelda claim when it told B&L that the Caterpillar, which was submerged in Imelda's floodwaters for an extended period, could be repaired by simply applying grease." *Id.* B&L states that it "followed Travelers'[] instruction, but the equipment broke after a short period of operation," and that Travelers' representation that

---

[7] This is different from the misrepresentations prohibited by Sections 541.051 and 541.061 of the Texas Insurance Code, which the Court discusses below. *See* discussion *infra* III.B.2.

the Caterpillar could be repaired simply by applying grease caused an additional $64,244 in damages. *Id*. As evidence to support this claim, B&L provides a sworn declaration from Mr. Bonin, *see* [Dkt. 30-1 at 8–9], and the $64,244.00 Sieben Estimate to repair the Caterpillar. *See id.* at 349. The Court therefore denies Travelers' motion for summary judgment on this issue.

## 2. Policy Misrepresentations

Sections 541.051 and 541.061 of the Texas Insurance Code enumerate conduct that constitutes unfair methods of competition or unfair or deceptive acts or practices in the business of insurance. In relevant part, Section 541.051 proscribes statements made by insurers that misrepresent the terms, benefits, or advantages promised by a policy that it has issued or that is to be issued. Tex. Ins. Code Ann. § 541.051(1)(A)–(B). Similarly, Section 541.061 proscribes "misrepresenting an insurance policy" by: (1) "making an untrue statement of material fact"; (2) "failing to state a material fact necessary to make other statements made not misleading, considering the circumstances under which the statements were made"; (3) "making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact"; (4) "making a material misstatement of law"; or (5) "failing to disclose a matter required by law to be disclosed, including failing to make a disclosure in accordance with another provision of this code." *Id.* § 541.061(1)–(5).

Section 541.061 is more frequently relied on than Section 541.051(1).[8] An insured that brings a Section 541.061 claim must "point to any statements or actions by [the insurer] that he contends constituted untrue statements about or failure to disclose something about the insurance policy." *Tex. Mut. Ins. Co. v. Morris*, 383 S.W.3d 146, 150 (Tex. 2012); *see also Tex. Mut. Ins. Co. v. Ruttiger*, 381 S.W.3d 430, 446 (Tex. 2012) (holding that there was no evidence to support

---

[8] To the Court's knowledge, the Supreme Court of Texas has issued no opinions that provide instruction regarding Section 541.051.

a finding based on Section 541.061 because the insured did not "point to any untrue statement made by [the insurer] regarding the policy or any statement about the policy that misled him"). A dispute that is simply over whether an insured's claim is factually within the policy's terms does not trigger Section 541.061. *Ruttiger*, 381 S.W.3d at 446.

Travelers asserts that B&L cannot present evidence that Travelers made an actionable misrepresentation, and so B&L's claim under Sections 541.051 and 541.061 fail as a matter of law. Specifically, Travelers takes the position that B&L's misrepresentation allegations pertain to the cause of the damage to the equipment, not the terms of the policy and its benefits, and therefore the allegations do not create an actionable claim under Section 541.051 or 541.061. [Dkt. 29 at 27]. In response, B&L points to three factual bases for its misrepresentation claims, and also reminds Travelers that its misrepresentation claims are brought, not only under Sections 541.051 and Section 541.061, but also under Section 541.060(a)(1). Because the Court already denied summary judgment on B&L's Section 541.060 claims, *see* discussion *supra* Section III.B.1., the Court need only address the factual basis that B&L provides for a misrepresentation claim under Sections 541.051 and 541.061.[9] The Court notes that the parties' arguments do not distinguish between Section 541.051 and Section 541.061.

B&L contends that Travelers not only "issued the policy *after* it learned the Equipment had been repaired as a result of Harvey-related flood damage," but that "[w]ith that knowledge, Travelers charged B&L a premium and included a $50,000 deductible." [Dkt. 30 at 18]; *see* [Dkt. 30-1 at 4–5] (sworn declaration of Bonin providing the same). "Now, however, Travelers is attempting to use the Harvey claim, which prompted it to increase B&L's premium and deductible,

---

[9] B&L's response to Travelers' motion for summary judgment makes clear that it brings its claims for post-loss misrepresentation under Section 541.060(a)(1). [Dkt. 30 at 16–17]. Given that the second and third bases that B&L provides for its misrepresentation claims are based on post-loss (*i.e.*, allegations of unfair settlement practices), *see id.* at 18–19, the Court does not address Travelers' arguments as to why they fail under Sections 541.051 and 541.061.

as grounds for denying B&L's Imelda claim in its entirety." [Dkt. 30 at 18]. In his sworn declaration, Mr. Bonin states: "Travelers never questioned whether the repairs to the Equipment had been properly made after Hurricane Harvey and, in fact, was given an opportunity to inspect the Equipment before insuring it." [Dkt. 30-1 at 4–5]. Put otherwise, B&L claims that Travelers misrepresented that the Equipment would be covered because it issued the Policy knowing that the Equipment had previously been damaged by Harvey, which is now its basis for denying B&L's claim. Travelers' challenge to this claim is that "B&L fails to identify a specific misrepresentation made by Travelers or a specific policy that B&L claims was misrepresented." [Dkt. 31 at 8]. The Court disagrees. B&L points to the Policy as Travelers' representation that the Equipment would be covered from future flood damage. B&L contends that Travelers made this representation knowing that the Equipment had previously been damaged by Harvey. Travelers now refuses to cover the damage because the Equipment was previously damaged by Harvey. Whether Travelers misrepresented the Policy or made a misrepresentation regarding the Policy is a genuine issue of material fact. The Court denies summary judgment on this issue.

## C. Texas Prompt Payment of Claims Act

"The prompt-payment statute provides for additional damages when an insurer wrongfully refuses or delays payment of a claim." *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 16 (Tex. 2007); *see* Tex. Ins. Code Ann. § 542.051–.061. To prevail on a prompt-payment claim under section 542.060 of the Texas Insurance Code, "the insured must establish: (1) the insurer's liability under the insurance policy, and (2) that the insurer has failed to comply with one or more sections of the [Texas Prompt Payment of Claims Act] in processing or paying the claim." *Barbara Techs. Corp. v. State Farm Lloyds*, 589 S.W.3d 806, 813 (Tex. 2019).

Travelers provides two bases for summary judgment on B&L's prompt payment claim. First, once again, Travelers argues that B&L cannot establish that the Policy covers its insurance claim because it cannot show what portion of its loss, if any was caused solely by Imelda. [Dkt. 29 at 28]. The Court reiterates that this is a fact question for the jury. Second, Travelers argues that even if B&L could present evidence to segregate the covered damage, B&L cannot show that the damage caused solely by Imelda exceeds the $50,000 flood deductible. *Id.* This is also a genuine issue of material fact. B&L has provided summary judgment evidence of estimates and invoices to repair the Equipment that total more than $50,000, [Dkt. 30-1 at 161–167; 184–215], and a sworn declaration from Mr. Bonin that contends that *Imelda* caused this damage. *Id.* at 8–9.

Whether Travelers has failed to timely pay B&L's insurance claim for damage covered by the Policy depends on genuine issues of material fact. Therefore, Travelers is not entitled to summary judgment on B&L's prompt payment claim.

## D.  Fraud

To prevail on a fraud claim, a plaintiff must show that: (1) "the defendant 'made a material representation that was false'"; (2) "the defendant 'knew the representation was false or made it recklessly as a positive assertion without any knowledge of its truth'"; (3) "the defendant intended to induce the plaintiff to act upon the representation"; and (4) "the plaintiff actually and justifiably relied upon the representation and suffered injury as a result." *JPMorgan Chase Bank, N.A. v. Orca Assets G.P., L.L.C.*, 546 S.W.3d 648, 653 (Tex. 2018) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001)). "The fourth element has two requirements: the plaintiff must show that it actually relied on the defendant's representation and, also, that such reliance was justifiable." *Id.* (citing *Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913, 923 (Tex. 2010)). Here, B&L's fraud claim is specifically for fraudulent

14

inducement, which "is a species of common-law fraud that shares the same basic elements" as fraud. *Anderson v. Durant*, 550 S.W.3d 605, 614 (Tex. 2018). "Fraudulent inducement is actionable when the misrepresentation is a false promise of future performance made with a present intent not to perform." *Id.*

Travelers asserts in its motion for summary judgment that B&L has no evidence to support any of the four elements. But as discussed, B&L has presented evidence that  Travelers knew about the Harvey damage and claim when it issued the Policy, and that Travelers issued the Policy with an increased flood deductible of $50,000 because of the previous claim and repairs. Yet Travelers now contends that the Imelda damage is not covered because B&L cannot prove that Harvey did not cause the damage. B&L has provided sufficient summary judgment evidence in its response to establish that: (1) Travelers made a false material representation that it would cover the previously damaged and repaired equipment from subsequent flood damage; (2) Travelers knew that the Equipment had been damaged by Harvey, and subsequently repaired, and increased the deductible because of the prior loss; (3) Travelers made this representation to induce B&L to purchase the Policy; and (4) that B&L purchased the Policy and paid the premium, in justifiable reliance of Travelers' representations, but received no coverage.

In its reply brief, Travelers only disputes that B&L raised a fact issue as to the intent element. Travelers points out that B&L's evidence relied on paragraph seven of Mr. Bonin's declaration, and argues that "nothing in Bonin's declaration sets forth any facts showing what Travelers[] intended when it issued the policy. Instead, paragraph 7 states only that B&L informed Travelers of the damage to the Equipment from Hurricane Harvey and that Travelers failed to perform its alleged promises after Imelda." [Dkt. 31 at 10] (citing Dkt. 30-1 at 3–4) (internal citations omitted).

"[I]ntent to defraud is not susceptible to direct proof, it invariably must be proven by circumstantial evidence." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 435 (Tex. 1986). "[W]hile breach [of contract] alone is no evidence of fraudulent intent, breach combined with 'slight circumstantial evidence' of fraud is enough to support a verdict for fraudulent inducement." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 205 (Tex. 2006). "[T]he evidence presented must be relevant to [the defendant's] intent at the time the representation was made." *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors*, 960 S.W.2d 41, 48 (Tex. 1998). But a party's intent at the time it made the representation "may be inferred from the party's subsequent acts after the representation is made." *Spoljaric*, 708 S.W.2d at 434. Ultimately, "intent is a fact question uniquely within the realm of the trier of fact because it so depends upon the credibility of the witnesses and the weight to be given to their testimony." *Id.*

Mr. Bonin's sworn declaration contends that Travelers denied B&L's insurance claim based on facts that Travelers knew at the time that it issued in the Policy. Given that only "slight circumstantial evidence" is necessary to establish intent, this is sufficient to create a genuine issue of material fact. Summary judgment on B&L's fraud claim is denied.

### E.  Conspiracy to Commit Fraud

"A party may be liable for conspiracy to commit fraud without being liable for the underlying fraud." *In re Arthur Andersen LLP*, 121 S.W.3d 471 482 (Tex. App.—Houston [14th Dist.] 2003, no pet.). The elements of a civil conspiracy claim are "(1) a combination of two or more persons; (2) an object to be accomplished (an unlawful purpose or a lawful purpose by unlawful means) (3) a meeting of minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as the proximate result." *Ins. Co. of. N. Am. v. Morris*, 981 S.W.2d 667, 675 (Tex. 1998).

16

Travelers seeks summary judgment on B&L's conspiracy to commit fraud claim because B&L has no evidence that Travelers, or any agent of Travelers: (1) "in combination with another person sought to accomplish an unlawful purpose or a lawful purpose by unlawful means"; or (2) "had a meeting of the minds with another person to accomplish an unlawful purpose or a lawful purpose by unlawful means." [Dkt. 29 at 30]. B&L's response to Travelers' motion for summary judgment does not respond to this argument, let alone provide any evidence to establish a genuine issue of material fact that Travelers engaged in conspiracy to commit fraud. Travelers is therefore entitled to summary judgment on B&L's conspiracy to commit fraud claim.

## IV.    CONCLUSION

It is therefore **ORDERED** that The Travelers Lloyds Insurance Company's Motion for Summary Judgment [Dkt. 29] is **GRANTED IN PART** and **DENIED IN PART**. Summary Judgment is granted as to B&L Environmental's claim against Travelers for Conspiracy to Commit Fraud. Travelers' Motion for Summary Judgment is otherwise denied.

It is further **ORDERED** that B&L Environmental's claim against The Travelers Lloyds Insurance Company for Conspiracy to Commit Fraud is **DISMISSED WITH PREJUDICE**.

**SIGNED this 24th day of July, 2023.**

_Michael J. Truncale_
Michael J. Truncale
United States District Judge

17